BRICKILL *et al. v.* CITY OF HARTFORD *et al.*

(*Circuit Court, D. Connecticut.* February 22, 1892.)

1. PATENTS FOR INVENTIONS—UNCERTAINTY OF CLAIM—WATER HEATER FOR FIRE-ENGINES.
     Letters patent No. 81,132, issued August 8, 1868, to William A. Brickill, consist of a water heater connected with the boiler of a steam fire-engine by two detachable pipes, one carrying the cold water to the heater and the other returning it, heated, to the boiler, thus "maintaining a free circulation between the boiler and heater," and keeping the water in the boiler always hot, so as to expedite the generation of steam on a fire-call. Pipes controlled by cocks connect the heater with a water-tank, and when the engine is away the same circulation is established and maintained between the heater and the tank, "the object being to preserve the coil or heater." The claim is for the "combination, with a steam fire-engine, of a heating apparatus, constructed substantially as described, for the purposes fully set forth." *Held,* that it sufficiently appears that the tank is a part of the heater, and not a separate element of the combination, and the patent is not void on its face for uncertainty.

2. SAME—COMBINATION.
     Construing the tank as part of the heating apparatus, the claim cannot be said to show on its face only an unpatentable aggregation of parts, since there is a joint and co-operating action between the heater and the boiler, and the action of each influences the action of the other.

3. SAME—LIMITATIONS—STATE STATUTES.
     State statutes of limitation are not applicable, even in the absence of a federal statute, to actions at law in the federal courts to recover damages for infringement of patents.

At Law. Action by William A. Brickill and others against the city of Hartford and others to recover damages for the infringement of a patent. Heard on demurrer to the complaint. Overruled.

*Raphael J. Moses, Jr.,* and *James A. Hudson,* for plaintiffs.

*Timothy E. Steele,* City Atty., and *Albert H. Walker,* for defendants.

SHIPMAN, District Judge. This is an action at law to recover damages for the alleged infringement of letters patent No. 81,132, dated August 18, 1868, to William A. Brickill, for an improved feed water heater for steam fire-engines. The present hearing is upon a demurrer to the plaintiffs' complaint. Before the date of the alleged invention, or of any similar device, the only method of keeping the water in a steam fire-engine in readiness to be immediately converted into steam when the summons came to extinguish a fire was by placing and keeping fire in the engine. That it was desirable to have the engine in readiness for immediate service is self-evident. That keeping a continuous fire in the engine was expensive, and might also be otherwise injurious, is also manifest. The object of Brickill's improvement was to have a detachable heater, which would continuously be in use, and supply the engine with hot water while it was in the engine-house, and could be detached when the engine was summoned to extinguish a fire. The specification says:

"The nature of the present invention consists in combining with a steam fire-engine a water heater, so constructed and connected to the boiler of a steam fire-engine that the water in the same is made to pass through the heater, and become heated, so that steam may be more rapidly generated than if my invention were not used in connection with the engine. The object of

the invention is to expedite, in a great measure, the extinguishing of fires, by supplying water, heated to very nearly the boiling point, to the boilers of steam fire-engines."

The heater is connected with the boiler of the engine by two detachable tubes, one of which receives the cold water and conveys it to the coil of the heater, and the other receives and conducts the water, when heated, from the heater to the boiler; "thus establishing and maintaining a free circulation between the heater and the boiler." Pipes, which are opened and closed by cocks, connect the heater and a water-tank. When an alarm of fire has been given, and the engine is away, communication between the water-tank and the heater is established by opening the cocks, and the heater is supplied with water from the tank, which, when heated, is returned to it, as in the case of the boiler, "the object being to preserve the coil or heater." The claim is for " the combination, with a steam fire-engine, of a heating apparatus, constructed substantially as described, for the purposes fully set forth." The demurrer specified five particulars in which the complaint was defective or showed no cause of action. The first was removed by an amendment, and need not be considered.

The complaint did not set out in words a description of the invention, but stated it by reference to and a profert of the patent. The ground of the second and third causes of demurrer is that the letters patent are on their face void, because they do not point out and distinctly claim the part, improvement, or combination which the patentee claimed as his invention; the particular fault being, as alleged, that it cannot be ascertained whether the tank or its equivalent is a part of the invention, as claimed. There are not three members of the combination,—the heater, the tank, and the engine. There are only two members,—the heating apparatus, of which the tank is a part, and the engine. The tank is particularly described as a part of the heating apparatus, and is to be used in the absence of the fire-engine, and is not to be used when and so long as the engine is again in the house. It is included in, and is pointed out with sufficient distinctness as a part of, that apparatus. Whether the omission of the tank and the use of the rest of the apparatus would constitute infringement is a question which does not arise on this demurrer. The omission to state in the specification the effect which the non-user of the tank would have upon the apparatus, or that the tank is a vital part of it, does not create an ambiguous statement of what the patentee claims to have invented.

The fourth ground of demurrer is that the patent is void, because it appears on its face to claim only an unpatentable aggregation of a steam fire-engine and of a heating apparatus. If the claim should be construed to consist of a combination of three distinct elements, heater, tank, and engine, the defect upon the face of the patent, which is pointed out in the demurrer, would exist, because there is no joint and co-operating action between such three separate elements. The services of the tank are only called into requisition during the absence of the engine, and cease upon its return. The joint action of heater and tank did not and could not affect the action of the boiler. The situation would be

similar to that which, in the view of the supreme court, existed in *Beecher Manuf'g Co.* v. *Atwater Manuf'g Co.*, 114 U. S. 523, 5 Sup. Ct. Rep. 1007. But, construing the claim to be a combination of heating apparatus, of which the tank is merely a part, and steam-engine, the vice does not, in my opinion, exist, because there is a joint and co-operating action between the heating apparatus and boiler, and the action of each influences and affects the action of the other.

It will be observed that the question of patentable invention, as affected by the use of mere mechanical skill, does not arise upon this demurrer. It will also be observed that the invention consists merely in an economical and efficient method of preparing the engine for immediate use at a fire. The conversion of hot water into steam, and the discharge of cold water upon a fire, are effected by a different set of instrumentalities. This preparation of the engine does not consist simply in the injection of hot water into the boiler, but cold water is constantly received from the boiler and conveyed to the heater, while another pipe conveys the water, when heated, from heater to boiler, and a free circulation between the two is thus maintained. Boiler and heater are jointly acting, each to receive and each to discharge; the result being that the engine is constantly prepared for immediate efficiency.

The fifth cause of demurrer is that so much of the plaintiffs' alleged right of action as arose between June 22, 1874, the date of the repeal of the federal statute of limitations, and July 22, 1885, six years before the date of the commencement of the suit, is barred by the statute of limitations of the state of Connecticut, which provides that no action founded upon a tort, unaccompanied with force, and where the injury is consequential, shall be brought but within six years next after the right of action shall accrue. The patent expired August 18, 1885. The complaint alleges a continuous infringement from the date of the patent during its life. This cause of demurrer raises the frequently discussed question of the effect of a state statute of limitations upon actions at law for the infringement of a patent during the period not covered or provided for by a federal statute of limitations. It is well known that this question has never been directly passed upon by the supreme court, and that it has been frequently discussed and decided, or left undecided, by the circuit courts, and that at the present time the number of decisions in favor of the position that a state statute of limitations has no effect upon the limitation of suits in the federal courts for the infringement of patents, largely exceeds the number of those which take the opposite view. In considering the decisions upon this question, the line of thought and reasoning which was adopted by Judge SHIRAS in *May* v. *Buchanan Co.*, 29 Fed. Rep. 469, as well as by other judges who preceded him, seems to me to lead the mind to the more satisfactory conclusion. It is plain that congress has the power to enact its own statute of limitations for actions upon patents, and it may also be considered as reasonably certain that it could, if it chose, adopt the state statutes, and declare that they expressed its own legislative will. The question is whether section 34 of the original judiciary act, now reproduced in section 721 of the Revised Statutes, which provides that "the

laws of the several states, except where the constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decisions in trials at common law, in the courts of the United States, in cases where they apply," was intended to make state statutes of limitations, which might be passed from time to time, applicable to rights of property which are exclusively within federal control, and are apart from the jurisdiction of a state legislature. If congress intended this result, it follows that the states could, during the time when no federal statute exists, attempt to limit very seriously, by amendments to their own statutes, the duration of the right of action for injuries to patents, and thus indirectly accomplish that which they had no power to legislate upon directly. Inasmuch as the states cannot legislate upon matters which are without state jurisdiction, a construction of section 721, which declares that congress has placed the subjects of exclusive federal control within the control of state legislation, is not to be presumed unless it is imperatively required by the terms of the section. That it is not absolutely required is implied in the clause which limits the effect of laws of the states to "cases where they apply." A natural and reasonable construction of the section is that, when actions are brought in the United States courts with respect to rights of property of which the states have control, the statutes which had been enacted in the respective states with respect to such rights should also be controlling; otherwise legislation in respect to such rights in the United States courts would be in a chaotic state, but that such statutes are not applicable to rights over which the state legislatures have no control, except as they relate to procedure, practice, or rules of evidence. *Schreiber* v. *Sharpless*, 17 Fed. Rep. 589. It has been sufficiently decided that in actions at law upon letters patent the rules of evidence which are created by statute in the respective states apply, (*Vance* v. *Campbell*, 1 Black, 427;) and this appears to be necessary, for otherwise rules of evidence in patent cases would be in a state of great uncertainty. While this exception must be made in order to create exactitude in the law so far as is possible, the conclusion by no means follows that the important right of protection to property in letters patent, so far as the protection is afforded by the ability to bring an action at law or in equity, was intended to be or has been controlled by state legislation. Such a conclusion seems to me to be at variance with the entire dual system of state and federal control under which we live. The conclusions upon this part of the demurrer are stated by Judge SHIRAS as follows: That section 721 declares that the laws of the state shall be followed as rules of decision "in cases where they apply;" that is, in cases which involve matters or rights within the legislative jurisdiction of the state. That, as the subject of letters patent and authorizing actions to be brought for the protection of rights thus created is wholly without state control, the general statute of limitations of the state does not, *ex proprio vigore*, apply thereto, and, not applying, is not made a rule of decision governing the United States court by the provisions of section 721. The demurrer is overruled.